```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
HITACHI CAPITAL AMERICA CORP.,

                       Plaintiff,

        -against-                                    21 Civ. 2426 (AT)

ECAPITAL CORP.,
                                                     ORDER
                       Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/6/2022

ANALISA TORRES, District Judge:

Plaintiff, Hitachi Capital America Corp. ("Hitachi"), brings this action against Defendant, eCapital Corp. ("eCapital"), for breach of contract, fraudulent transfer pursuant to Title 6 §§ 1304(a) and 1305(a) of the Delaware Code, conversion, and unjust enrichment. Compl., ECF No. 5.

Before the Court is Defendant's motion for summary judgment, Def. Mot., ECF No. 60, Defendant's motion to exclude Plaintiff's expert David Campbell, Def. Daubert Mot., ECF No. 62, and Plaintiff's motion for partial summary judgment, Pl. Mot., ECF No. 64. For the reasons stated below, Plaintiff's motion is GRANTED, Defendant's motion to exclude is DENIED without prejudice to renewal, and decision on Defendant's motion for summary judgment is HELD IN ABEYANCE.

## BACKGROUND[1]

I.  Factual Background

On March 31, 2016, Plaintiff entered into a revolving loan agreement (the "Credit Agreement") with Trade Finance Solutions Holding, Inc., now known as Global Merchant

---

[1] The following facts are drawn from the parties' Rule 56.1 statements of undisputed fact and the response thereto. Facts in dispute are so noted. Citations to a paragraph in Defendant's Rule 56.1 Statement also include Plaintiff's response, and vice versa.

Finance Inc. ("GMF") and TFS Canada Bond Series, Inc., now known as eCapital, Defendant. Pl. 56.1 ¶ 1, ECF No. 74, *see generally* Credit Agreement, ECF No. 66-1. Defendant is the parent company of GMF, which is a special purpose vehicle. Def. 56.1 ¶¶ 3–4, ECF No. 68; Credit Agreement at 1. Under the Credit Agreement, Plaintiff extended a $20,000,000 revolving loan to GMF. Pl. 56.1 ¶ 1. This amount was later increased to $25,000,000. *Id.* The loan was secured by a security agreement (the "Security Agreement"), under which GMF conveyed to Plaintiff a first lien interest in all of GMF's assets, including the collateral GMF purchased using the loan (the "Collateral"), which was mostly accounts receivable from Paragon Financial Group, Inc. ("Paragon")[2] and Global Merchant Trust. *Id.* ¶ 2; Def. 56.1 ¶¶ 7–8; *see also* Security Agreement §§ 3(a), 3(m), 6(f), ECF No. 66-3. Defendant provided Plaintiff with a monthly borrowing base certificate ("BBC"), which recorded the value of the Collateral assigned to GMF and served as the borrowing base for the loan. Def. 56.1 ¶ 10.

The parties to the Credit Agreement also executed a subordination agreement (the "Subordination Agreement"), which subordinates to the loan created under the Credit Agreement all "indebtedness, liabilities and obligation" of GMF to Defendant (the "Subordinated Debt"). Pl. 56.1 ¶ 3; *see also* Subordination Agreement at 1, § 2, ECF No. 66-4. The Credit Agreement prohibits GMF from paying or taking on more Subordinated Debt prior to paying to Plaintiff the amount owed under the Credit Agreement, unless the subordinated payment or loan is made (1) "prior to the occurrence and during the continuance of a Default or an Event of Default," as defined in the Credit Agreement, and (2) so long as the ratio of the amount owed to Plaintiff under the Credit Agreement and the outstanding Subordinated Debt remains "equal to 3.00:1.00." Pl. 56.1 ¶ 6; Def. 56.1 ¶ 59; Subordination Agreement § 4(b)(i). Further, the

---

[2] Paragon was acquired by Defendant in January 2018. Def. 56.1 ¶ 5.

2

Subordination Agreement prohibits set-offs. Pl. 56.1 ¶ 7[3]; Subordination Agreement § 4(a)(i). Finally, as relevant here, the Subordination Agreement requires that Defendant, as the subordinated creditor, hold any improper payments in trust for Plaintiff, as the senior creditor. Pl. 56.1 ¶ 5; Subordination Agreement § 8. After the parties entered into the agreements outlined above, the revolving loan appeared to work as contemplated for approximately three years. Def. 56.1 ¶ 12.

On January 15, 2018, GMF made an advance to Paragon in the amount of $7,711,078, and Paragon executed a grid note for up to $9,000,000 (the "Note"). Pl. 56.1 ¶ 9; Note at ¶ 1, Schedule A, ECF No. 68-11. The Note defines Paragon as the borrower and GMF as the lender. *See* Note. The January 31, 2018 trial balance[4] for GMF reflects the advance to Paragon, as well as an amount due to Defendant, both for $7,711,078. ECF No. 71-9.

On January 1, 2019, GMF assigned the Note to Defendant, then known as Global Merchant Bond Series, Inc., Pl. 56.1 ¶ 1 n.1, pursuant to an assignment and assumption agreement (the "Assignment"), whereby Defendant assumed GMF's rights under the Note. Assignment at ECF0017784, ECF No. 71-8. The Assignment states that it is "an absolute, present transfer for value and is not made as security for the performance of any obligation." *Id.* The Assignment also annexes a one-page term sheet which lays out GMF's representation and warranties. *Id.* at ECF0017784, -7791. GMF warrants that the Note "is free and clear of any lien, encumbrance or other adverse claim." *Id.* at ECF0017791 § 1.1.1. After execution of the Assignment, GMF's amount due to Defendant was then set off by the Note. Pl. 56.1 ¶ 14. The trial balance for GMF dated February 28, 2019, reflects a zero-balance due to Defendant as well

---

[3] The Plaintiff's 56.1 statement appears to contain a typographical error, referring to section 3 rather than section 4.
[4] A trial balance is "a list of the debit and credit balances of accounts in a double-entry ledger at a given date prepared primarily to test their equality." Trial Balance, Merriam-Webster, https://www merriam-webster.com/dictionary/trial%20balance (last visited Sept. 6, 2022).

as a zero-balance due from Paragon.  ECF No. 71-14.

On November 18, 2019, Paragon paid Defendant the amount due on the Note in the amount of $7,837,836.19 which included "$7,711,078.00 in the form of cash and credit on other obligations," Pl. 56.1 ¶ 16, plus interest in the amount of $126,757.45, ECF No. 71-15.

On December 16, 2019, Plaintiff and GMF entered into a letter agreement (the "Forbearance Agreement") as part of the wind-down of the Credit Agreement.  Forbearance Agreement at 1, ECF No. 5-12.  The Forbearance Agreement was negotiated at arms' length, with both parties having "roughly equal bargaining power."  Def. 56.1 ¶ 35.  It states that as of December 16, 2019, the "balance under the Credit Agreement is $20,262,511.49 plus accrued and unpaid interest."  Forbearance Agreement ¶ 1.  It further provides a schedule for payment of the balance to Plaintiff, including a payment of $5,000,000 plus accrued and unpaid interest on December 16, 2019, id., followed by three monthly payments, starting on January 15, 2020, each for $3,000,000 plus accrued and unpaid interest, id. ¶ 2(i).  The final payment was due June 30, 2020, when GMF was to (1) "remit payment on receipt of funds" collected from four accounts outlined in the Forbearance Agreement, and (2) "pay any amount outstanding in respect of the Credit Agreement on" that date.  Id. ¶ 2(ii).  The Forbearance Agreement amends the Credit Agreement's payment requirements; however, the remainder of the Credit Agreement remained in effect.  Id. ¶¶ 3, 9.

Plaintiff and Defendant agree that the Credit Agreement is in default, as defined therein.  Pl. 56.1 ¶ 20.  Plaintiff claims it is currently owed "in excess of $7.5 million plus continually accruing default interest and fees" pursuant to the Credit Agreement, as modified by the Forbearance Agreement.  Id.  Defendant contends that it "does not know the amount owed" to Plaintiff by GMF.  Id. (response).

4

II.       <u>Procedural Background</u>

This case was filed on March 19, 2021.  Compl.  Defendant, in its memorandum of law in support of its motion for summary judgment mentions in passing a related case in the Southern District of Florida, *ECapital Commercial Financing Corp. v. Hitachi Capital America Corp. et al*, No. 21 Civ. 60152 (the "Florida Case").  Def. Mem. at 1–2, ECF No. 61; *see also* ECF No. 24 at 4.  The plaintiff in the Florida Case is Paragon, now known as eCapital Commercial Financing Corporation, a subsidiary of Defendant.  Florida Case ECF No. 1 ¶¶ 1, 12; Def. 56.1 ¶ 5.  In that case, Paragon alleges that Plaintiff contacted Paragon's customers attempting to collect on accounts owned by Paragon.  *See* Florida Case ECF No. 1 ¶ 1; *see also* Def. Mem. at 1–2.

The Court, having reviewed the counterclaims in the Florida Case, determines that Plaintiff is pursuing claims nearly identical to causes of action IV through VII in this case, although the causes of action IV and V are pleaded under both Delaware and Florida law in the Florida Case.  *Compare* Compl. ¶¶ 67–88, *with* Florida Answer Counterclaims ¶¶ 23–45, Florida Case ECF No. 32.  Further, the factual allegations in the two complaints are virtually identical.  *Compare* Compl. ¶¶ 7–40, *with* Florida Answer Counterclaims ¶¶ 1–22.  The counterclaims in the Florida Case were filed on March 15, 2021, four days before the instant action was commenced. Compl.; Florida Case ECF No. 32.

On December 1, 2021, Paragon, the counterclaim defendant in the Florida Case, moved for summary judgment.  Florida Case ECF No. 74.  On February 23, 2022, Defendant submitted a motion for summary judgment in this action.  Def. Mot.  Paragon's briefs in the Florida Case and those filed here by Defendant with respect to its motion for summary judgment overlap for many of the claims.  *Compare* Def. Mem. §§ II.B.–E., IV.C.2–3, *with* Florida Case ECF No. 74 §§ II.B.–E, IV.A.1–2.a.  This convergence is so extensive that, in Defendant's reply filed with

5

this Court, Defendant did not alter the name from "eCapital" to "Paragon" to reflect the different defined terms in the two cases. *See* Def. Reply at 11–12, ECF No. 76; Florida Case ECF No. 96 at 7.

Neither party alerted the Court to the overlap between the claims in the two cases, nor did they inform the Court that the Honorable Jared M. Strauss had issued a decision on Paragon's summary judgment motion in the Florida Case, Florida Order, Florida Case ECF No. 97, and that a bench trial before Judge Strauss is scheduled to begin in 13 days, Florida Case ECF No. 102. Rather, the Court discovered these facts after conducting its own review of the Florida Case's docket, which Defendant's briefing references.[5]

## DISCUSSION

Defendant moves for summary judgment on all claims and to exclude the testimony of David Campbell.  Def. Mot.; Def. Daubert Mot.  Plaintiff moves for summary judgment only as to the second cause of action, breach of the Subordination Agreement.  Pl. Mot.  The Court shall address Plaintiff's motion for summary judgment and Defendant's motion to exclude.  Finally, the Court shall address areas that require additional briefing in light of the Florida Case.

I. Motions for Summary Judgment

A. Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir. 2004).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

[5] The Court may take judicial notice of the docket and documents filed there because they are public records. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

242, 248 (1986). Material facts are those which, under governing law, may affect the outcome of a case. *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing particular evidence in the record. Fed. R. Civ. P. 56(a), (c); *Celotex,* 477 U.S. at 322–25; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir. 2002). The movant may satisfy its burden by "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(B). In deciding the motion, the court views the record in the light most favorable to the nonmoving party. *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir. 2002).

If the moving party meets its initial burden, the burden shifts to the opposing party to establish a genuine dispute of fact. *Beard v. Banks,* 548 U.S. 521, 529 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir. 2001). The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by facts. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir. 2002) (citation omitted). Instead, the opposing party must set forth "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (quotation marks omitted).

B. Analysis

Plaintiff contends that Defendant breached the Subordination Agreement by executing the Assignment and not holding the Note in trust for the benefit of Plaintiff. *See generally* Pl. Mem., ECF No. 65. It is undisputed that New York law governs this cause of action. *See generally id.*; Def. Opp'n, ECF No. 75. Under New York law, to prevail on a claim for breach of contract, the plaintiff must show: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of [the] defendant to perform; and (iv) damages."

*Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). If the contract is unambiguous, a court must give effect to its plain terms. *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (applying New York law). However, after a contract has been formed, parties to it are able to alter or waive portions of an agreement by their "course of performance." *C.T. Chemicals (U.S.A.), Inc. v. Vinmar Impex, Inc.*, 613 N.E.2d 159, 162 (N.Y. 1993). "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned," and "[s]uch abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006) (citation and quotation marks omitted). "[F]or a course of performance to demonstrate mutual assent to a modification, it must be unequivocally referable to the modification." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) (citation and quotation marks omitted) (applying New York law).

Plaintiff contends that the execution of the Assignment and the resulting set-off of the amount GMF owed Defendant, and Defendant's failure to hold the Note in trust for Plaintiff, constituted a breach of Defendant's obligations under the Subordination Agreement. *See generally* Pl. Mem. Plaintiff argues that once the advance to Paragon was recorded in GMF's book, it became part of the Collateral, as defined by the Security Agreement. Pl. Mem. at 3–4. Plaintiff contends that the amount due to Defendant in the trial balance was Subordinated Debt under the Subordination Agreement. *Id.* Further, Plaintiff argues that the ratio between debt due under the Credit Agreement and subordinated debt did not remain equal to 3 to 1 after the set-off, thereby breaching the express terms of the Subordination Agreement. *Id.* at 5, 11. Plaintiff contends that had the transfer and set-off not occurred, when the Note was paid by Paragon, the

8

funds would have been disbursed in the priority outlined in the Subordination Agreement, with payment going first to Plaintiff, and any remainder going to the Subordinated Debt. *Id.* at 4, 11–12. Plaintiff argues that the amount GMF owes Plaintiff under the Credit Agreement is more than the amount paid by Paragon to Defendant pursuant to the Note. *Id.* at 12. Further, Plaintiff contends that because the set-off represents an improper payment to Defendant under the terms of the Subordination Agreement, Defendant should have held the Note in trust for Plaintiff. *Id.* at 9–10.

By contrast, Defendant interprets the Subordination Agreement to permit payment of the Subordinated Debt if the ratio is not higher than 3 to 1, in other words, if the amount owed to Plaintiff is not in excess of 75% of the total outstanding debt of GMF. Def. Opp'n at 2, 7. Defendant bases this reading on what it contends is the parties' course of dealing. *Id.* at 7–8. Defendant argues that the BBCs, the template of which was provided by Plaintiff, permitted GMF to borrow under the Credit Agreement if the amount owing was less than 75% of the value of the Collateral, or less than 90% of the net funds employed. *Id.* at 3. Defendant contends that at the time of the set-off, the ratio was below 3 to 1, and therefore, the payment of the Subordinated Debt was permitted under the Subordination Agreement, as modified by the parties' course of dealing as evidenced by the formula used in the BBCs. *Id.* at 5–7. Specifically, Defendant claims that, in February 2019, there was $8,474,814.37 in Subordinated Debt in addition to the amount due to Defendant related to the Note, therefore, the payment to Defendant via the set-off was permitted because it "exceed[ed] the $8,333,333 of Subordinated Debt that [Plaintiff] acknowledges was sufficient to keep the 3:1 ratio in balance."[6] *Id.* at 9; *see*

---

[6] Defendant also notes that Plaintiff did not reference the Note in the complaint. Def. Opp'n at 5. However, Defendant does not make any argument related to this lack of pleading beyond one sentence in the fact section of its opposition, and one sentence in a footnote in its reply brief related to its own motion for summary judgment. *Id.*; Def. Reply at 9 n.5. In the reply brief footnote, Defendant states that the issue was raised in its pre-motion letter.

*also id.* at 8, 10; Pl. 56.1 ¶ 15 (response). Defendant further argues that because the payment was permissible under the Subordination Agreement, it was not obligated to keep the funds in trust for Plaintiff. Def. Opp'n at 10.

The Court finds that the Subordination Agreement is not ambiguous. Therefore, the Court shall give effect to the terms of the Subordination Agreement. *Parks Real Est. Purchasing Grp*, 472 F.3d at 42. Defendant appears to argue that Plaintiff waived the contractual rights under § 4 of the Subordination Agreement through the BBCs, which calculated the amount GMF could borrow at any given time using a formula with the value of the Collateral and the net funds employed as inputs. Def. Opp'n at 6–9. This argument fails because the eligible accounts are different from the Subordinated Debt, which is the figure looked to in § 4 of the Subordination Agreement. *Compare* Credit Agreement Schedule 1.1(a) (defining eligible accounts), *with* Subordination Agreement § 2 (defining Subordinated Debt). Further, for a waiver of a contractual right or term by party performance to be valid under New York law, the waiver must be based on the waiving party's "clear manifestation of intent." *Fundamental Portfolio Advisors, Inc.*, 850 N.E.2d at 658. Here, the BBC formula does not clearly demonstrate that Plaintiff intended to have the terms of the Subordination Agreement modified, including the § 4 ratio requirement, which does not rely on the BBC calculation. *See Dallas Aerospace, Inc.*, 352 F.3d at 783. Finally, Defendant contends that if Plaintiff's interpretation of the contract were accurate, Defendant would have been in default at "all times" prior to the Note transaction, and, therefore, Plaintiff waived its right to enforce the ratio requirement. Def. Opp'n at 10–11.

---

Def. Reply at 9 n.5. In that letter, Defendant raised the pleading issue but states that it believes the "best approach is to allow both parties to address through summary judgment motions the issue [Plaintiff] is now raising." ECF No. 51 at 1. Accordingly, Defendant waived any argument related to the pleading of the breach of the Subordination Agreement related to the Note, both by its plain statements in the pre-motion letter and by not sufficiently raising the issue in its opposition.

10

However, the ratio requirement is only operative when GMF "repaid or reborrowed" the Subordinated Debt. Subordination Agreement § 4(b)(i). Defendant does not point to any instance in which Plaintiff knowingly did not enforce its rights under the Subordination Agreement. *See generally* Def. Opp'n. Therefore, the Court determines that waiver of the terms of the Subordination Agreement did not occur. The Court now turns to interpreting the Subordination Agreement as written.

Under the Subordination Agreement, Defendant is obligated to hold in trust for Plaintiff funds it received from GMF "on account of the Subordinated Debt" unless the payment is within the limited exceptions in the contract. Subordination Agreement § 8. Neither party contests that Plaintiff was owed payments under the Credit Agreement when the facts giving rise to this claim occurred. *See* Pl. 56.1 ¶¶ 8, 15. Even, *arguendo*, accepting Defendant's assertion of the Subordinated Debt amount on the relevant date, *see* Def. Opp'n at 9, the ratio was 2.95:1:00, which is not "equal to 3.00:1.00," *id.* § 4(b)(i), when the Subordinated Debt was set off by the transfer of the Note.[7] The Court shall not excise the term "equal" or remove the preciseness of the ratio, which is articulated to the hundredth place, and thereby construct a contract different from that entered into by the parties. *Bailey v. Fish & Neave*, 868 N.E.2d 956, 959 (N.Y. 2007). Therefore, the set-off, which was in effect a payment of Subordinated Debt, was not permitted under the Subordination Agreement. Defendant was obligated to hold in trust and transfer the Note to Plaintiff if any Subordinated Debt was paid directly or via set-off "prior to payment in full of the" debt owed under the Credit Agreement. Subordination Agreement §§ 2, 5, 8.

The remaining elements of a breach of contract claim exist. It is undisputed that a

---

[7] Whether the Subordinated Debt amount Defendant calculated was accurate or whether, as Plaintiff asserts, the amount due to Defendant related to the Note was the only Subordinated Debt, is not material to the resolution of this issue.

11

contract was formed, and this formation is evidenced by the Subordination Agreement. Defendant does not argue that Plaintiff failed to perform under the Subordination Agreement. *See generally* Def. Opp'n.  Finally, the Court finds that Plaintiff was damaged by Defendant's breach.  Plaintiff is still owed under the Credit Agreement, as modified by the Forbearance Agreement.  The Forbearance Agreement set up a payment schedule for the wind-down of the Credit Agreement.  Forbearance Agreement at 1.  This included payments on set dates which totaled $14,000,000, plus accrued and unpaid interest through those dates, and a final payment on June 30, 2020, for the outstanding balance, which would have been $6,262,511.49, less any funds remitted prior to that date from four delineated accounts.  *Id.* ¶¶ 1, 2.  Defendant concedes that the final payment was not made, Def. 56.1 ¶ 39, although it contends that the payment was only due if certain funds were collected, *id.* ¶¶ 37–39, an argument which is inconsistent with the plain terms of the Forbearance Agreement.  The Court finds that Plaintiff is owed $6,262,511.49, less any funds remitted prior to June 30, 2020, from four delineated accounts.  Further, the Court finds that Plaintiff is also owed accrued and unpaid interest on that sum because the interest terms of the Credit Agreement were not modified by the Forbearance Agreement.  *See* Forbearance Agreement ¶ 9.  Plaintiff has been damaged by Defendant's failure to hold the Note in trust, because the Note could have been applied to the outstanding amount owed to Plaintiff by GMF.

Accordingly, Plaintiff's motion for partial summary judgment is GRANTED.

C. Damages

Under the terms of the Subordination Agreement, Defendant must hold in trust and "promptly pay the same over or deliver" to Plaintiff, in "precisely the form received by" Defendant, any payments Defendant received in violation of the Subordination Agreement's

terms.  Subordination Agreement § 8.  It is not possible for Defendant to deliver the Note to Plaintiff because Defendant was paid by Paragon $7,837,836.19 in cash and credit on other obligations on November 18, 2019, to satisfy the Note.  Pl. 56.1 ¶ 16; ECF No. 71-15.  Therefore, the Court must determine the appropriate damages.  Plaintiff requests that the Court enter judgment in the amount of "$7,837,836.19 or any such lesser amount owed" under the Credit Agreement.  Pl. Mem. at 12.

The amount owed under the Credit Agreement, as modified by the Forbearance Agreement, is not readily ascertainable.  As discussed above, the amount of outstanding senior debt owed to Plaintiff under the Credit Agreement is $6,262,511.49, less any funds remitted prior to June 30, 2020, from four delineated accounts, plus accrued and unpaid interest.  Plaintiff asserts that, as of July 9, 2020, "$6,298,174.13 plus continually accruing interest, fees and costs" were unpaid under the Credit Agreement, as modified by the Forbearance Agreement.  Def. 56.1 ¶ 39 (response).  Plaintiff further claims that the amount owing has increased to $7,700,233.96 as of December 31, 2021, plus interest, fees, and costs that have accrued since that date.  ECF No. 66-5 ¶ 4.  Defendant does not contest Plaintiff's assertion in its 56.1 Statement that it is "owed in excess of $7.5 million."  However, Defendant does state that it "does not know the amount owed by GMF to" Plaintiff.  Pl. 56.1 ¶ 20 (response).  Such a response is insufficient to create a material issue of fact.  *See Ezagui v. City of New York*, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010).  Since December 31, 2021, interest has continued to accrue on the amount due under the Credit Agreement.  *See* Credit Agreement § 3.1.  Therefore, the Court shall require an updated figure before judgment is entered for this cause of action.  The Court shall only enter judgment up to the amount owed to Plaintiff under the Credit Agreement or, if the amount owing under the Credit Agreement is greater than the amount Defendant received for the Note, the Court shall

enter judgment in the amount Defendant received for the Note.

The Court now turns to the issue of entering judgment.  Plaintiff requests that the Court enter partial judgment "in the amount of $7,837,836.19 in [Plaintiff's] favor."  Pl. Reply at 9, ECF No. 78; *see also* Pl. Mem. at 12.  The Court must determine if the three requirements of Federal Rule of Civil Procedure 54(b) are met before entering partial judgment.  These are: "(1) there are multiple claims or parties; (2) at least one claim or the rights and liabilities of at least one party has been finally determined; and (3) the court makes an 'express [] determin[ation] that there is no just reason for delay.'"  *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, 769 F.3d 135, 140 (2d Cir. 2014) (quoting Fed. R. Civ. P. 54(b)) (alterations in original).  The first element is met if the claim decided is "sufficiently separate and distinct as to lend [itself] to review as single unit[]."  *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 418 (2d Cir. 1989).  The claim here is not "based upon factual and legal questions that are distinct from those questions remaining before the" Court.  *Id.*  For example, other causes of action concern the interpretation of the Subordination and Forbearance Agreements, and others involve factual issues relating to the Note.  Accordingly, the Court shall not enter partial judgment.

II.   Motion to Exclude

Plaintiff offers the testimony of David Campbell as an expert in financial and operational restricting and turnarounds, including assessing collateral value, liquidation value, and solvency.  Campbell Report ¶¶ 4–7, ECF Nos. 63-1–63-3.  Campbell opines on the issues of: (1) whether GMF received a reasonable value in exchange for the assets transferred to Paragon, *id.*; (2) whether the exchanges were permissible under the Credit Agreement, *id.* ¶ 2; and (3) whether the termination of the preferred stock purchase agreement was permissible under the Credit

Agreement, *id.* ¶ 3. He concludes the GMF did not receive a reasonable value from Paragon for the assets, *id.* ¶ 10, that the exchange violated the Credit Agreement, *id.* ¶¶ 14–16, and rendered GMF insolvent, *id.* ¶ 19. Finally, he opines that the termination of the preferred stock purchase agreement was not permissible under the Credit Agreement. *Id.* ¶¶ 41, 44.

Defendant moves to exclude all of Campbell's testimony,[8] arguing that he disregarded relevant facts relating to the valuation of assets transferred between GMF and Paragon, including the difference between the face value of the accounts and their actual value given the terms of Paragon's contract with its customers, rendering his methodology unreliable. Def. Daubert Mem. at 1–2, 6–8, 10–12, ECF No. 63. Defendant further contends that his opinion is contrary to governing law and, therefore, it could not help the trier of fact. *Id.* at 10–12. Finally, Defendant argues that Campbell's opinion as to the termination of the preferred stock purchase agreement is beyond the scope of his expertise and is an improper legal opinion. *Id.* at 1, 8, 12–14. Plaintiff counters that Defendant has not contended that it will suffer unfair prejudice if the testimony is permitted. Pl. Daubert Opp'n at 1, 12, ECF No. 69. It also argues that Campbell's opinion is reliable, based on appropriate facts, and was the product of reliable methodology. *Id.* at 12–17. Finally, as to the termination of the preferred stock purchase agreement, Plaintiff contends that Campbell's opinion will assist the trier of fact in determining if the cancellation was made for a fair value, as required under the Credit Agreement. *Id.* at 17–18.

Where, as here, the case shall be tried by the Court, *see* ECF No. 28, *see also* ECF No. 43; *see also* Credit Agreement § 11.1(d) (waiver of right to trial by jury), many courts in this circuit receive the expert testimony and decide whether to credit it later. *See Kortright Cap.*

---

[8] Although Defendant moves to exclude all of Campbell's testimony, it does not make arguments related to his insolvency opinion. *See generally* Def. Daubert Mem.

15

*Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 397 (S.D.N.Y. 2019). This is because, unlike with a jury trial, "there is no possibility of prejudice[] and no need to protect the factfinder from being overawed by 'expert' analysis." *Chill v. Calamos Advisors LLC*, No. 15 Civ. 1014, 2018 WL 4778912, at *6 (S.D.N.Y. Oct. 3, 2018) (citation omitted). Therefore, "expert evidence should be quite freely admitted so that the judge may have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions." *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 09 Civ 5935, 2011 WL 3874878, at *2 (S.D.N.Y. Aug. 31, 2011) (quotation marks and citation omitted); *see also Van Alen v. Dominick & Dominick, Inc.*, 560 F.2d 547, 552 (2d Cir. 1977) ("[O]rdinarily it may be the more prudent course in a bench trial to admit into evidence doubtfully admissible records, and testimony based on them . . . ."). Accordingly, the Defendant's motion to exclude Campbell's testimony is DENIED, without prejudice to renewal in Defendant's post-trial briefing.

   III.   Impact of Florida Case

A bench trial in the Florida Case is slated to begin on September 19, 2022. Florida Case ECF No. 102. This raises a number of issues the parties have failed to brief, which the Court shall address below.

First, Judge Strauss has already entered a summary judgment decision in the Florida Case which addresses overlapping issues between the two cases. *See* Florida Order. If Judge Strauss enters final judgment without modifying that order, the legal findings in the Florida Order will become final. This raises the prospect of collateral estoppel because the parties involved in the two actions are either identical or related to each other. *See Ryan v. N.Y. Tele. Co.*, 467 N.E.2d 487, 490 (N.Y. 1984) (under New York law, collateral estoppel attaches to those in privity with

the parties against whom an issue was decided). The parties shall brief which state's law would govern the collateral estoppel issue. Further, the parties shall brief whether there would be estoppel effect given that the counterclaim defendant in the Florida Case is a subsidiary of Defendant, rather than the identical entity.

Next, should the Florida Case result in damages being awarded to Plaintiff, the Court must account for those in calculating damages, at minimum for the breach of the Subordination Agreement the Court found above. This is because "judicial policy forestalls a double recovery for an injury." *Barrington v. New York*, 806 F. Supp. 2d 730, 740 (S.D.N.Y. 2011) (quoting *Zarcone v. Perry*, 434 N.Y.S.2d 437, 443 (N.Y. App. Div. 2nd Dep't 1980), *aff'd*, 431 N.E.2d 974 (1981)); *see also Ostano Commerzanstalt v. Telewide Sys., Inc.*, 880 F.2d 642, 649 (2d Cir. 1989). The maximum Plaintiff can receive is the amount owning under the Credit Agreement. *See* Pl. Mem. at 12; Pl. Reply at 8 (stating that the funds from the Note should have been applied to Plaintiff's senior debt).

Finally, the Court is inclined to stay this case pending the resolution of the Florida Case because such a stay will promote judicial efficiency and "minimiz[e] the possibility of conflicts between different courts." *Catskill Mountains Chapter Trout Unlimited, Inc. v. EPA*, 630 F.Supp.2d 295, 304 (S.D.N.Y. 2009) (citation omitted). Therefore, the parties shall also brief the propriety of a stay of this action.

Because these issues may impact the Court's decision on Defendant's motion for summary judgment, the Court shall order supplemental briefing and hold in abeyance decision on Defendant's motion for summary judgment. Accordingly, by **October 7, 2022**, the parties shall provide a joint letter of no more than ten pages stating their positions on the issues outlined above.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for partial summary judgment is GRANTED; Defendant's motion to exclude Campbell's testimony is DENIED, without prejudice to renewal; and the Court's decision on Defendant's motion for summary judgment is HELD IN ABEYANCE.  By **October 7, 2022**, the parties shall provide a joint letter of no more than ten pages as detailed above.  Further, by **October 1, 2022**, the parties shall inform the Court whether they wish to be referred for a settlement conference before the Honorable Barbara C. Moses.

The Clerk of Court is directed to terminate the motion at ECF Nos. 60, 62, and 64.

SO ORDERED.

Dated:  September 6, 2022
        New York, New York

_____
ANALISA TORRES
United States District Judge